IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM H. COULTAS, CHRISTINE COULTAS,
and CHRISTINE SCHWANENBERG, filing
individually and in her capacity as personal
representative of the Estate of Roark Schwanenberg,

              Plaintiffs,              3:15-cv-0237-PK

v.                                       OPINION AND ORDER

LIBERTY MUTUAL FIRE INSURANCE CO.,

              Defendant.

PAPAK, Magistrate Judge:

      Plaintiffs William H. Coultas and Christine Coultas, as well as Christine Schwanenberg, filing individually and as a personal representative of the Estate of Roark Schwanenberg (collectively, "Plaintiffs"), filed the instant action against defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"), alleging two counts of conversion in violation of Oregon law. This court has jurisdiction over those claims pursuant to 28 U.S.C. § 1332.

      Now before the court is Liberty Mutual's motion to dismiss (#10) pursuant to Federal

OPINION AND ORDER - 1

Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed below, Liberty Mutual's Motion is denied.

## PROCEDURAL BACKGROUND

On December 10, 2014, Plaintiffs filed a complaint in the Circuit Court of Oregon for the County of Multnomah alleging conversion, wrongful use of civil proceedings, and a breach of the duty of good faith and fair dealing on behalf of all Plaintiffs, as well as one count of fraud on behalf of Plaintiff Schwanenberg. Plaintiffs later filed their Amended Complaint (#1-1) eliminating all but their fraud and conversion claims.

On February 11, 2015, Liberty Mutual removed Plaintiffs' lawsuit to this court (#1). On February 18, 2015, Liberty Mutual filed the current Motion to Dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) (#10).

On March 4, 2015, Plaintiffs filed a Notice of Voluntary Dismissal (#20) of their fraud claim pursuant to Rule 41(a). That same day, Plaintiffs filed their Response (#21) to Liberty Mutual's Motion to Dismiss.

On April 7, 2015, the court heard Oral Argument on Liberty Mutual's Motion. This matter is fully submitted and prepared for decision.

## FACTUAL BACKGROUND[1]

In August 2008, Roark Schwanenberg and Plaintiff William Coultas were involved in a tragic helicopter crash that proved fatal for Mr. Schwanenberg and caused Mr. Coultas to suffer

---

[1] I note that, in ruling on a Rule 12(b)(6) motion to dismiss, I must take the Complaint's allegations of material fact as true and construe them in a light most favorable to the nonmoving party. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013); *see also Kearns v. Tempe Tech. Inst.*, 39 F.3d 222, 224 (9th Cir. 1994).

OPINION AND ORDER - 2

an extended coma and severe burns. Amended Complaint, #1, Ex. A, 20, ¶¶ 6, 8, 12. Thereafter, Liberty Mutual, which contracted with the employer of the individuals involved in the crash, began paying workers' compensation benefits to Mr. Coultas and Mr. Schwanenberg's widow, Plaintiff Christine Schwanenberg. *Id.* ¶¶ 12–14.

In October 2008, Liberty Mutual sent letters to Mr. Coultas and Mrs. Schwanenberg allowing them to elect whether to file suit themselves against the parties potentially responsible for the helicopter crash or, alternatively, to assign their right to file suit to Liberty Mutual. *Id.* ¶¶ 16, 20. Mrs. Schwanenberg received her letter from Liberty Mutual on October 14, 2008. *Id.* ¶ 17. Mr. Coultas received his letter on October 16, 2008. *Id.* The letters instructed the recipients to sign and return their election to Liberty Mutual "within 60 days of receipt" of the letters. *Id.* ¶ 20. The letters further informed the recipients of Oregon's two-year Statute of Limitations governing their claim. *Id.* ¶ 21.[2]

Both Mr. Coultas and Mrs. Schwanenberg elected to file suit themselves. *Id.* ¶¶ 22–23. After noting his election, Mr. Coultas mailed the letter to Liberty Mutual. Amended Complaint, #1, Ex. A, 20, ¶ 23. After noting her election, Mrs. Schwanenberg gave the letter to a family friend, Mr. Johnson, to mail to Liberty Mutual. *Id.* ¶ 22.

Liberty Mutual acknowledged receipt of Mr. Coultas's letter and election but maintains that it did not receive Mrs. Schwanenberg's letter and election. *Id.* ¶ 24. Liberty Mutual's internal documents indicate that the Schwanenberg election letter was mailed to Liberty Mutual

---

[2] The Oregon Workers' Compensation Board and the Oregon Court of Appeals later found that the letters sent by Liberty Mutual contained false or misleading statements and did not comply with statutory requirements for an effective assignment of the rights at issue. Amended Complaint, #1, Ex. A, 20, ¶ 27.

OPINION AND ORDER - 3

but was then returned to sender. *Id.*

At no point did Liberty Mutual inform Plaintiffs that their responses were invalid, that Liberty Mutual was not in receipt of their responses, or that Liberty Mutual intended to proceed against the potentially responsible parties. *Id.* ¶ 25.

On December 10, 2008, fifty-seven days after Mrs. Schwanenberg received her election letter, Liberty Mutual filed a lawsuit in the United States District Court for the Northern District of California on behalf of Roark Schwanenberg and his survivors and beneficiaries against multiple defendants, including Columbia Helicopters, an entity insured by Liberty Mutual. *Id.* ¶ 30.

On February 11, 2009, Mr. Johnson contacted Liberty Mutual via telephone to notify it that Mrs. Schwanenberg had elected to bring suit herself. *Id.* ¶¶ 24, 30.

Thereafter, Liberty Mutual moved to dismiss its claims against Columbia Helicopters. *Id.* ¶ 31. That motion was granted on April 1, 2009. *Id.*

On January 23, 2009, Liberty Mutual filed a lawsuit in the United States District Court for the District of Connecticut on behalf of Mr. Coultas against multiple defendants, again including Columbia Helicopters. *Id.* ¶ 32.

Thereafter, Liberty Mutual filed a Notice of Voluntary Dismissal of its claims against Columbia Helicopters. *Id.* ¶ 33. That notice was endorsed by the presiding court on February 11, 2009. *Id.*

Plaintiffs then hired a law firm to separately file suit against the potentially responsible parties involved in the crash, despite Liberty Mutual's pending suits. That firm, AndersonGlenn LLP, asked Liberty Mutual to dismiss its suits in order for Plaintiffs to file their own suits in their

OPINION AND ORDER - 4

own choice of courts. *Id.* ¶ 36–37. Liberty Mutual refused and sought to consolidate its cases brought on behalf of Plaintiff Coultas and Mr. Schwanenberg before the Panel on Multi-District Litigation ("MDL"). *Id.* ¶ 40. Thereafter, on February 24, 2010, AndersonGlenn went forward with litigation in Oregon state court on behalf of Plaintiffs Coultas and Schwanenberg against Columbia Helicopters, Inc., and two other defendants. *Id.* ¶ 45.

On April 8, 2011, the Oregon Workers Compensation Board ruled that Liberty Mutual's claimed assignments of the right to sue on behalf of Plaintiffs were void due to misrepresentations within the 2008 letters containing the election forms. *Id.* ¶ 47. This order was forwarded by AndersonGlenn to Liberty Mutual, which did not immediately desist its still-pending litigation, but did so after receiving direction to do so from the U.S. District Court for the District of Connecticut. *Id.*

In response, Liberty Mutual appealed the board decision as it applied to the assignment by Plaintiff Schwanenberg. *Id.* While the appeal was pending, Plaintiffs continued to try their case in Oregon state court and were ultimately awarded $70,455,000 by a jury on March 27, 2012. *Id.* ¶ 48. Nonetheless, Liberty Mutual pursued its appeal. *Id.* It lost that appeal sixteen months after the Board's decision and four months after the Oregon jury verdict, and ultimatlely dismissed the case brought on behalf of Mrs. Schwanenberg. *Id.* ¶ 47.

## LEGAL STANDARD

### I. Applicable Law

When sitting in diversity, a district court applies the substantive law of its forum state and federal procedural law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also, e.g., Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th

OPINION AND ORDER - 5

Cir. 1980). I therefore apply Oregon substantive law and federal procedural law in deciding the motions now before the court.

## II. Motion to Dismiss for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 224 (9th Cir. 1994). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008). Moreover, the "court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## ANALYSIS

Defendants move to dismiss Plaintiffs' conversion claim on the grounds that Oregon law does not recognize a claim for conversion for the right to sue another party and, in the alternative, even if such a claim is recognized by Oregon law, Plaintiffs cannot meet the requirements to state such a claim under the circumstances.

### I. *Prima Facie* Conversion Claim

To establish a *prima facie* conversion claim, a plaintiff "must prove an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel." *Cron v. Zimmer*, 255 Or. App. 114, 296 P.3d 567, 576–77 (2013), quoting *Mustola v. Toddy*, 253 Or. 658, 663, 456 P.2d 1004 (1969) (adopting the definition of conversion found in Restatement (Second) of Torts § 222A(1) (1965)).

Plaintiffs argue that the chattel at issue in this case is "the right to assert a cause of action . . . ." Pl.'s Response, #21, 7. Plaintiffs essentially allege that Liberty Mutual's filing of subrogation lawsuits on behalf of Plaintiffs without their valid assignment suffices to establish Liberty Mutual's exercise of dominion or control over Plaintiffs' personal property in a way that seriously interfered with Plaintiffs's claims against the responsible third parties. Amended Complaint, #1, Ex. A, 20, ¶ 64.

In analyzing conversion claims, Oregon courts apply the methodology of the Restatement (Second) of Torts § 222A. Courts look to: (1) the extent and duration of the exercise of dominion or control; (2) the actor's intent to assert a right that is inconsistent with the other's right; (3) the actor's good faith, or lack thereof; (4) the extent and duration of interference; (5) the

OPINION AND ORDER - 7

harm done to the chattel in question; and (6) the inconvenience and expense caused to the other. *Fogh v. McRill*, 153 Or. App. 159, 166 (1998).

## II. Conversion of a Chose in Action or a Right to Bring Suit

Here, the primary contention at issue in Liberty Mutual's motion is whether the right to assert a cause of action, or a "chose in action,"[3] is a chattel subject to conversion. Liberty Mutual argues that a simple review of conversion jurisprudence establishes that a chose in action is simply not a chattel subject to conversion. Def.'s Reply, #25, 3. Courts in Oregon and other jurisdictions, however, have found that a chose in action can, in some situations, be subject to conversion. *See Nichols v. Jackson Cty. Bank*, 136 Or. 302, 307–08 (1931) (allowing a mortgagee to bring a conversion claim for mortgaged sheep based upon a viable mortgage); *see also Eade v. First Nat'l Bank of Condon*, 17 Or. 47 (1926) (distinguishing between ordinary conversion cases and an action for conversion of mortgaged chattels, holding that where a chattel mortgage had been given a secure note and, because of conversion, is lost or destroyed, the mortgagee could recover in a conversion action); *SouthTrust bank v. Donely*, 925 So.2d 934, 940 n.9 (2005) (noting that negotiable instrument is a chose in action subject to conversion).

While Oregon courts have determined that choses in action in the form of mortgaged items governed by formalized and negotiated instruments can be subject to conversion, they have not addressed whether other choses in action, such as the right to bring a lawsuit to recover for a

---

[3] In its Reply, Liberty Mutual correctly identifies the legal definition of such a right. Black's Law Dictionary defines a "chose" as "[a] thing, whether tangible or intangible; a personal article; a chattel." BLACK'S LAW DICTIONARY (10th ed. 2014), "chose." Black's also includes under that definition the term "chose in action," which includes the following: "a claim for damages in tort" as well as "the right to bring an action to recover a debt, money, or thing." *Id.* at "chose in action." Further, American Jurisprudence 2d notes that a "chose in action" is a property right to "recover a personal chattel or sum of money." 18 Am. Jur. 2d Conversion § 8.

OPINION AND ORDER - 8

tort, can be subject to conversion. However, this district has, in recent years, determined that Oregon courts would likely find that intangible personal property may be considered chattels for the purposes of a conversion claim. *See Joe Hand Promotions, Inc. v. Jacobsen,* 874 F. Supp. 2d 1010, 1016 (D. Or. 2012). In *Joe Hand*, the court conducted a thorough and careful survey of common law, the definition of chattel, and accommodations in conversion jurisprudence to include intangible goods in the general definition of chattels. *See id.* (Citing *Kremens v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003)). The court noted that virtually every jurisdiction "has, to some degree, discarded the traditional limitation that applied conversion actions only to tangible goods." *Id.* The court further explained that, "[a]s the nature of property interests began to change, so, too, did the law relating to the type of property that is capable of conversion." *Id.* at 1018. The *Joe Hand* court therefore "[found] it likely" that the Oregon courts would extend the definition of "chattel" to include a broadcasting license for a television program, based on the fact that such a license provides the holder with the right to "receive a transmitted signal; to rebroadcast the signal; and to determine when, where, and by whom the program contained within the signal can be displayed or exhibited . . . ." *Id.* at 1019.

Based on similar reasoning, this district has also found that Oregon courts would likely extend the definition of chattel to include patent rights due in part to the fact that they provide a patent holder an intangible right to control the use of patented technology. *See Lyden v. Nike, Inc.*, 2013 WL 5729727 at *4 (D. Or. Oct. 23, 2013). The *Lyden* court reached this conclusion both by applying *Joe Hand* and by referring to the following definition: a "chattel personal" is a . . . type of chattel and . . . is defined as "a tangible good or an intangible right (such as a patent)." *Lyden*, 2013 WL 5729727 at *4.

OPINION AND ORDER - 9

Given these findings regarding the likelihood of Oregon courts to extend the definition of chattel to intangible property rights, Plaintiffs in this case argue that

> If a broadcast license, the right to control when, where and how a television show is presented, and a patent, the right to control when, where and how certain technology is used, are protected intangible property subject to conversion, so too is the right to control when, where and how a lawsuit is brought.

Pl's. Response, #21, 10.

Liberty Mutual contends that the courts mentioned above dealt with "newly developed or recently recognized type[s] of property," Def.'s Reply, #25, 4, and points to an array of cases from other jurisdictions that considered these and other forms of new technology intangible personal property subject to conversion. *See Joe Hand*, 874 F. Supp. 2d. 1018–21 (collecting cases that analyzed satellite signals, authorization codes, stock options, and more). On these grounds, Liberty Mutual attempts to distinguish a right to bring a cause of action from those other "newly developed or recently recognized type[s] of property." Liberty Mutual's argument falls short, however, as the patent rights that *Lyden* considered chattel subject to conversion are by no means a "newly developed" or "recently recognized" type of property, and have long been defined as intangible chattel. *See Belding v. Turner*, 3 F. Cas. 84, 85 (D. Conn. 1871) (A patent is "defined as an incorporeal chattel, which the patent impresses with all the characteristics of personal estate"); *see also Carr v. Rice*, 5 F. Cas. 140, 145 (S.D.N.Y. 1856) ("assignees [of a patent] became the owners of the discovery, with a perfect title," and thus "[p]atent interests are not distinguishable, in this respect, from other kinds of property").

I find no sufficient legal distinction between the property at issue here and *Joe Hand's* broadcasting license or *Lyden's* patent that would cause me to refrain from applying those courts' reasoning to the current case. Choses of action, as here, have long been recognized as assignable

OPINION AND ORDER - 10

personal property, and the very trait of assignability gave rise to the present dispute. As a result of the legal evolution of "chattels personal," choses of action have long been characterized, alongside patents, trademarks, prints, labels, and copyrights, as personal property falling within the definition of "chattel":

> Choses in action, though valuable rights, had not in early times the ordinary incident of property, namely, the capability of being transferred; for, to permit a transfer of such a right was, in the simplicity of the times, thought to be too great an encouragement to litigation .... It was impossible, however, that this simple state of things should long continue.
>
> In process of time . . . an indirect method of assignment was discovered, the assignee being empowered to sue in the name of the assignor; and in the reign of Henry VII, it was determined that a "chose in action may be assigned over for lawful cause as a just debt, . . . and that where a man is indebted to me in, and another owes him, by bond, he may assign this bond and debt to me in satisfaction, and I may justify for suing it *in the name of the other* at my own costs." Choses in action, having now become assignable, *became an important kind of personal property.*

JOSEPH J. DARLINGTON, A TREATISE ON THE LAW OF PERSONAL PROPERTY 6–10 (1891) (citations omitted, emphases added); BLACK'S LAW DICTIONARY 286 (10th ed. 2014). Given the fact that choses in action, like the right at issue here, are legally indistinct from other forms of chattels personal for present purposes, I adopt the reasoning of the *Joe Hand* and *Lyden* courts and find that same reasoning applies to the property at issue in this case, and that an assignable cause of action does indeed constitute a chattel subject to conversion.

## II. Liberty Mutual's Exercise of Dominion and Damages

Liberty Mutual argues, in the alternative, that even if Plaintiffs' cause of action is a chattel subject to conversion, Liberty Mutual did not exercise sufficient dominion or control over or cause harm to the chattel in question to support Plaintiffs' claim for conversion. Def.'s

OPINION AND ORDER - 11

Motion, #10, 23. Plaintiffs rebut by arguing that Liberty Mutual's action "opened the plaintiffs up to defense arguments to dismiss any separately filed lawsuits under the 'first filed' rule and prohibitions on splitting of causes of action, effectively preventing plaintiffs from filing their own lawsuits." Pl.'s Response, #21, 11. Plaintiffs allege that Liberty Mutual's conduct increased litigation expenses, caused emotional distress, delayed Plaintiffs' ability to exercise their right to bring action, forced Plaintiffs' to intervene in Liberty Mutual's federal action, and forced the initiation of actions in the Oregon Workers Compensation Board. Amended Complaint, #1-1, ¶¶ 40–42, 44. Plaintiffs also allege that Liberty Mutual continued to pursue claims even with knowledge it was operating under invalid pretenses. *Id.* ¶ 52.

Taking the Complaint's allegations of material fact as true and construing them in the light most favorable to Plaintiffs, I find that Plaintiffs' allegations that Liberty Mutual asserted dominion and control over their causes of action, resulting in the above injuries and impediments to Plaintiffs' ability to exercise those rights, satisfy the Rule 12(b)(6) standard and are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (#10) is denied.

IT IS SO ORDERED.

Dated this 18th day of May, 2015.

*/s/ Paul Papak*
Honorable Paul Papak
United States Magistrate Judge

OPINION AND ORDER - 12