IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM H. COULTAS, et al.,

    Plaintiffs,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

    Defendant.

Civil No. 03:15-cv-00237-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

Plaintiffs William H. Coultas, Christine Coultas, and Christine Schwanenberg (filing individually and as the personal representative of the Estate of Roark Schwanenberg) (collectively, "Plaintiffs"), filed the instant action against Defendant Liberty Mutual Fire Insurance Company ("Liberty"). This court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332. Now before the court is Plaintiffs' "Motion to Compel, or in the Alternative, Motion for In Camera Review" (#60) ("Plaintiffs' Motion to Compel"). For the reasons provided below, Plaintiffs' Motion to Compel is denied.

## FACTUAL BACKGROUND

On August 5, 2008, Roark Schwanenberg and William Coultas were involved in a helicopter crash that killed Mr. Schwanenberg and seriously injured Mr. Coultas. Shortly thereafter, Liberty began paying workers' compensation benefits to Mr. Coultas and Christine Schwanenberg, Mr. Schwanenberg's widow, under the terms of a Workers' Compensation and

OPINION AND ORDER Page | 1

Employer's Liability Policy. Liberty assigned Serena Zywicki, a senior recovery specialist employed by Liberty, to oversee Plaintiffs' claims. Zywicki hired Jon Kodani as outside counsel to take over Liberty's potential subrogation claims arising from the helicopter crash.

On October 7, 2008, Kodani sent letters informing Plaintiffs of their option to personally sue the third parties responsible for the helicopter crash or, alternatively, to assign their rights to sue to Liberty (the "Election Letters"). The Election Letters instructed Plaintiffs to sign and return their election to Liberty "within 60 days of receipt" of the Election Letters. Mr. Coultas elected to file suit personally and returned his election to Liberty within sixty days. Mrs. Schwanenberg also elected to file suit personally but failed to return her election to Liberty within sixty days.[1]

On December 10, 2008, Liberty filed a subrogation action in the United States District Court for the Northern District of California on behalf of Roark Schwanenberg and his survivors and beneficiaries. Likewise, on January 23, 2009, Liberty filed a subrogation action in the United States District Court for the District of Connecticut on behalf of Mr. Coultas. Both lawsuits asserted claims arising from or related to the helicopter crash.

Plaintiffs then retained counsel in an effort to file their own lawsuit regarding the crash. Plaintiffs' counsel asked Liberty to dismiss its subrogation actions on behalf of Plaintiffs. Liberty refused and sought to consolidate the subrogation actions before the Panel on Multi-District Litigation.

Thereafter, on February 24, 2010, Plaintiffs filed suit against multiple defendants in the Multnomah County Circuit Court, asserting claims arising from the helicopter crash.

---

[1] The Parties appear to dispute whether Mrs. Schwanenberg ever returned her election to Liberty, but that issue is immaterial to the resolution of Plaintiffs' Motion to Compel.

OPINION AND ORDER Page | 2

On April 8, 2011, the Oregon Workers' Compensation Board issued Orders finding Liberty's claimed assignments of rights to sue on behalf of Plaintiffs were void due to misrepresentations contained in the Election Letters. Liberty then dismissed its subrogation suit on behalf of Coultas. Liberty appealed the Oregon Workers' Compensation Board Order regarding Schwanenberg's purported assignment of rights to Liberty. The Oregon Court of Appeals affirmed the Order on August 8, 2012. Liberty subsequently dismissed its subrogation suit on behalf of Schwanenberg.

Meanwhile, Plaintiffs continued to try their case in Multnomah County Circuit Court and eventually obtained a $70,455,000 jury verdict.

## PROCEDURAL BACKGROUND

On December 10, 2014, Plaintiffs filed their initial Complaint (#1-1) in this action, alleging conversion, wrongful use of civil proceedings, and breach of duty of good faith and fair dealing on behalf of all Plaintiffs, as well as one count of fraud on behalf of Schwanenberg. On January 12, 2015, Plaintiffs filed an Amended Complaint (#1-1) eliminating all but the fraud and conversion claims. On February 11, 2015, Liberty removed Plaintiffs' lawsuit to this court. On March 4, 2015, Plaintiffs filed a Notice of Voluntary Dismissal (#20) of their fraud claim. Thus, Plaintiffs' only remaining claims are those alleging conversion in relation to Liberty's pursuit of the abovementioned subrogation actions.

On or about May 22, 2015, Plaintiffs served Liberty with a request for production, seeking documents related to Plaintiffs, the Election Letters, and the subrogation actions underlying the present case. Liberty responded to Plaintiffs' requests for production on or about July 1, 2015. The responsive documents contained numerous redactions accompanied by objections on the grounds of attorney-client privilege.

OPINION AND ORDER Page | 3

Plaintiffs filed the current Motion to Compel (#60) on August 3, 2015. Plaintiffs challenge Liberty's assertions of privilege with respect to the redactions in two documents only—Liberty's electronic claims journals for the Coultas and Schwanenberg workers' compensation and subrogation claims (the "Claims Journals"). Liberty filed its Response in Opposition to Plaintiffs' Motion (#63) on August 24, 2015. Plaintiffs filed their Reply in Support of Plaintiffs' Motion (#69) on September 9, 2015. After hearing oral arguments on Plaintiffs' Motion to Compel on September 17, 2015, the court asked the Parties to submit supplemental briefing on the privilege issue. Both Parties timely submitted supplemental briefing on September 28, 2015. This matter is fully submitted and prepared for decision.

## LEGAL STANDARDS

### I. Attorney-Client Privilege

Parties may obtain discovery "regarding any *nonprivileged* matter that is relevant to any party's claim or defense." Fed. R. Civ. Pro. 26(b)(1) (emphasis added). Because the court has subject matter jurisdiction over this case by reason of diversity of citizenship only, Oregon law governs issues of privilege and waiver. *See* Fed. R. Evid. 501; *Malbco Holdings, LLC v. Patel*, No. 6:14-CV-00947-PK, 2015 WL 2260661, at *1 (D. Or. May 13, 2015). A party asserting attorney-client privilege bears the burden of establishing that the requested information is actually privileged. *See, e.g., Relion, Inc. v. Hydra Fuel Cell Corp.*, No. CV06-607-HU, 2008 WL 5122828, at *2 (D. Or. Dec. 4, 2008); *Goldsborough v. Eagle Crest Partners, Ltd.*, 805 P.2d 723, 725 (Or. App. 1991) *aff'd*, 838 P.2d 1069 (Or. 1992).

Oregon's attorney-client privilege is applicable only if the following three elements are established: (1) the purportedly privileged information is a "confidential communication," (2) the communication was made "for the purpose of facilitating the rendition of professional legal

services to the client," and (3) the communication was between privileged parties. Or. Rev. Stat. § 40.225(2). A client waives its attorney-client privilege by voluntarily disclosing or consenting to disclosure of any significant part of a privileged communication. Or. Rev. Stat. § 40.280. However, waiver by voluntary disclosure does not occur if the disclosure itself is a privileged communication. *Id.*

## II. Motion to Compel

Federal Rule of Civil Procedure 37(a)(3)(B) permits a propounding party to move for an order compelling production or inspection of documents if a request for production is not honored. "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Additionally, Federal Rule of Civil Procedure 26(b)(1) provides: "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

## III. In Camera Review

District courts within the Ninth Circuit perform a two-step analysis in determining whether to grant a motion for in camera review. *See United States v. Zolin*, 491 U.S. 554, 572 (1989); *see also In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992) ("[W]e find that the standard established in *Zolin* for crime-fraud in camera review applies equally well when . . . a party believes that the materials are not privileged for reasons other than the crime-fraud exception.").

At the first step of the analysis, the court must determine whether the moving party has satisfied its burden of showing that the requested information may not be privileged. *See In re Grand Jury Investigation*, 974 F.2d at 1071. To satisfy its burden, the moving party must show

"a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Id.* at 1075.

At the second step of the analysis, the district court exercises its broad discretion in deciding whether to grant in camera review. *Id.* at 1071. In making that decision, the court should consider the amount of material it has been asked to review, the relevancy of the allegedly privileged material, and the likelihood that in camera review may reveal evidence that the requested information is not privileged. *Id.* at 1072 (citing *Zolin*, 491 U.S. at 572).

## DISCUSSION

Plaintiffs seek the Claims Journals to support their conversion claims. Oregon courts analyze conversion under the Second Restatement of Torts approach. *See, e.g., Fogh v. McRill*, 956 P.2d 236, 241 (Or. App. 1998) (citing Restatement (Second) of Torts § 222A). That approach requires courts to consider, *inter alia*, the alleged tortfeasor's "good faith, or lack thereof." *See, e.g., id.* (citing Restatement (Second) of Torts § 222A). The Parties appear to agree that the redacted portions of the Claims Journals relate, at least in part, to Liberty's reasoning for pursuing the subrogation actions on behalf of Plaintiffs. The redacted portions of the Claims Journals are therefore relevant to Plaintiffs' conversion claims, as they will tend to make it more or less likely that Liberty acted in good faith in pursuing the subrogation actions. *See* Fed. R. Evid. 401 (defining relevancy).

The bigger issue before the court is whether, notwithstanding their relevancy, the redacted portions of the Claims Journals are nevertheless exempt from disclosure on the basis of attorney-client privilege. The Parties do not dispute that the redacted information in the Claims Journals consists of confidential legal advice from Liberty's outside counsel and, as such, was

initially privileged.[2] However, Plaintiffs argue that Liberty waived its attorney-client privilege by voluntarily including the privileged communications in the Claims Journals. Plaintiffs further argue that even if Liberty did not waive its privilege by including the privileged communications in the Claims Journals, it waived its privilege by making its counsel's advice an issue in the case. Finally, Plaintiffs argue, in the alternative, for in camera review of the Claims Journals. Each of these arguments is addressed, in turn, below.

I. **Waiver by Inclusion of the Privileged Communications in the Claims Journals**

As explained above, waiver occurs when a client voluntarily discloses a significant part of a privileged communication and the disclosure itself is not a privileged communication. Or. Rev. Stat. § 40.280; *accord State ex rel. Oregon Health Sciences Univ. v. Haas*, 942 P.2d 261, 265 (Or. 1997). It is undisputed that Liberty voluntarily disclosed to some of its employees all of the privileged communications sought by Plaintiffs when it included those communications in the Claims Journals. Therefore, Liberty waived its privilege unless the Claims Journals are themselves privileged communications. Resolution of that issue requires the court to determine whether the Claims Journals are confidential communications between privileged parties for the purpose of facilitating the rendition of legal services to Liberty. *See* Or. Rev. Stat. § 40.225(2); *accord Haas*, 942 P.2d at 265.

A. **Confidentiality and the Purpose of Liberty's Disclosure**

Liberty has established that the Claims Journals are confidential communications made for the purpose of facilitating the rendition of legal services to Liberty. A confidential communication is one that is "not intended to be disclosed to third persons other than those to

---

[2] To be sure, Plaintiffs contended at oral argument that to the extent the redacted portions of the Claims Journals contain only Liberty's employees' subjective summaries of legal advice from outside counsel, those portions of the Claims Journals were never protected by the attorney-client privilege. The court rejects that argument for the reasons provided below. *See infra* Part III.

OPINION AND ORDER Page | 7

whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Or. Rev. Stat. § 40.225(1)(b). A communication is made for the purpose of facilitating the rendition of legal services if the communication "makes it easier for an entity to make use of legal advice or services." *Port of Portland v. Oregon Ctr. for Envtl. Health*, 243 P.3d 102, 107 (Or. App. 2010) (citing *Haas*, 942 P.2d 261).

The Claims Journals are stored in Liberty's online document system, known as ExPRS. Murray Decl. ¶ 3 (#72). ExPRS is only accessible to Liberty employees who work in the workers' compensation, subrogation, cost-recovery, and legal departments.[3] *Id.* at ¶¶ 3, 12. Liberty has numerous protocols in place to ensure access to ExPRS is restricted to that limited group of Liberty employees. For example, no Liberty employee can access ExPRS without first being added to a restricted group on Liberty's computer network, which requires authorization from Liberty's information technology department. Murray Decl. ¶ 6. Even after obtaining authorization from Liberty's information technology department, authorized employees still must install the ExPRS software on their computers before being able to access ExPRS. *Id.* at ¶ 8. Logon credentials must then be entered at two different points prior to actually using the ExPRS software. *Id.* at ¶ 9. Additionally, all Liberty employees are trained on and required to follow Liberty's Code of Conduct, which instructs employees to never access company information without a work-related reason and to avoid reviewing confidential information where an unauthorized person might see it. Weiner Decl. ¶¶ 4, 6, 7 (#73). These protocols show Liberty did not intend to disclose the Claims Journals to third persons beyond a select group of Liberty employees.

---

[3] Employees outside those departments can only access ExPRS by obtaining manager approval on an as-needed basis. *Id.* at ¶ 12.

OPINION AND ORDER Page | 8

Furthermore, storing the Claims Journals in ExPRS makes it easier for Liberty to use its legal advice by making that advice readily available to Liberty employees potentially responsible for acting on, or in accordance with, the advice. Thus, the Claims Journals were disclosed for the purpose of facilitating and furthering the rendition of legal services to Liberty. *See Port of Portland*, 243 P.3d at 107 (holding that a communication is made for the purpose of facilitating the rendition of legal services if the communication "makes it easier for an entity to make use of legal advice or services" (citation omitted)); *see also Haas*, 942 P.2d at 266 (finding that a communication was confidential and thus protected by the attorney-client privilege where it was disclosed to only a select group of employees).

In sum, Liberty utilizes numerous protocols to prevent the Claims Journals from being disclosed to anyone other than a select group of employees whose jobs require them to have access to that information. Liberty's limited disclosure also makes it easier for Liberty to act on the legal advice and services it receives. Consequently, the Claims Journals are confidential communications made for the purpose of facilitating the rendition of legal services to Liberty. *See* Or. Stat. Rev. § 40.225(1)(b).

### B. Privileged Parties

Liberty has established that the Claims Journals are communications between privileged parties. Oregon's attorney-client privilege rule sets forth five categories of communications between privileged parties. *See id.* (2). Four of those categories require a lawyer to be a party to the communication. *See id.* (2)(1)(a)-(c), (e). Zywicki admitted during her deposition that Kodani did not have access to the Claims Journals. See Pl.'s Mem. in Supp. of Mot. to Compel Ex. C, 91 (#61-7). Thus, the only potentially applicable category of privileged communications is that which encompasses communications between "representatives of the client or between the

OPINION AND ORDER Page | 9

client and a representative of the client." Or. Rev. Stat. § 40.225(2)(1)(d); *accord Haas*, 942 P.2d at 267. A representative of a client includes a person who, "for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the person's scope of employment for the client." Or. Rev. Stat. § 40.225(1)(e).

Liberty's workers' compensation, subrogation, cost-recovery, and legal department employees received confidential communications via the Claims Journals for the purpose of effectuating legal representation for Liberty. *See id.* Liberty is an entity, and as such, it must act through its agents. The legal advice in the Claims Journals related to Liberty's pursuit of subrogation claims on behalf of Plaintiffs pursuant to the terms of a Workers' Compensation and Employer's Liability Policy between Liberty and Plaintiffs' employer. Thus, Liberty required its workers' compensation, subrogation, cost-recovery, and legal department employees to receive and act on, or pursuant to, the confidential communications in the Claims Journals while acting in the scope of their employment. *See id.*

Similarly, Liberty's workers' compensation, subrogation, cost-recovery, and legal department employees made confidential communications via the Claims Journals for the purpose of effectuating legal representation for Liberty. *See id.* For example, some of those employees made entries in the Claims Journals pertaining to Coultas's medical conditions, requests for authorization to allow billing for medication, benefits calculations, and vocational rehabilitation. All of that information would factor into Liberty's damages in a subrogation action. Thus, Liberty required its workers' compensation, subrogation, cost-recovery, and legal department employees to make confidential communications in the Claims Journals while acting in the scope of their employment. *See id.*

In sum, Liberty disclosed the Claims Journals to only Liberty employees who, for the purpose of effectuating legal representation for Liberty, made or received confidential communications while acting in the scope of their employment. *See id.* The Claims Journals are therefore communications between representatives of a client. Because, as discussed above, the Claims Journals are also confidential communications made for the purpose of facilitating the rendition of legal services to Liberty, Liberty did not waive its attorney-client privilege by including privileged communications in the Claims Journals.

## II. Waiver by Making Counsel's Advice an Issue in the Case

Liberty has also established that it did not waive its privilege by making its counsel's advice an issue in the case. A client waives the attorney-client privilege by asserting the advice of counsel defense, which requires the client or its attorney, acting at the client's request, to testify to privileged communications. *See Roberts v. Legacy Meridian Park Hosp., Inc.*, No. 3:13-CV-01136-SI, 2015 WL 1608088, at *8 (D. Or. Apr. 10, 2015); *Columbia Cascade Co. v. Interplay Design, Ltd.*, No. CIV. 90-148-FR, 1990 WL 200099, at *2 (D. Or. Dec. 6, 1990); *see also Goldsborough*, 805 P.2d at 726 ("[W]aiver does not require a subjectively intended act. It may be recognized by implication.").

It is Liberty's choice whether to assert the advice of counsel defense. At oral argument on Plaintiffs' Motion to Compel, Liberty stipulated it will not rely on the advice of counsel defense at trial. Liberty therefore has not waived its privilege by making its counsel's advice an issue in the case. Pursuant Liberty's stipulation and its ongoing assertion of attorney-client privilege, Liberty is precluded from introducing evidence at trial of its counsel's advice regarding the subrogation actions to prove that it acted in good faith in pursuing those actions on behalf of Plaintiffs.

## III. In Camera Review

Liberty voluntarily provided the court with the Claims Journals for in camera review. Plaintiffs contend that in camera review is warranted because it may reveal that some of the redacted entries in the Claims Journals are Liberty's employees' subjective summaries of legal advice from outside counsel. Plaintiffs argue those portions of the Claims Journals are not protected by the attorney-client privilege. The Supreme Court of Oregon has clearly established that a client does not waive its privilege when one of its employees discusses privileged communications with other employees on a need-to-know basis. *See Haas*, 942 P.2d at 266, 271.

Furthermore, Plaintiffs have not presented any evidence that the redacted portions of the Claims Journals actually contain Liberty's employees' subjective views of the legal advice Liberty received. At oral argument, Plaintiffs' counsel acknowledged that Liberty does not purport to have redacted its employees' subjective views of legal advice and then stated: "But it strikes me as strange that these people never expressed their own views, period." Even assuming, *arguendo*, that *Haas* is distinguishable from the present case, Plaintiffs' speculation is insufficient to satisfy their burden of showing a "factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d at 1075. Consequently, in camera review of the Claims Journals is not warranted.[4] *See, e.g., id.* at 1071-75; *Zolin*, 491 U.S. at 572.

## CONCLUSION

For the reasons provided above, the court finds that Liberty has not waived its attorney-client privilege as to the redacted portions of the Claims Journals. Plaintiffs' Motion to Compel

---

[4] The court further recognizes that it has broad discretion in deciding whether to conduct in camera review. *See id.* at 1071. The length of the Claims Journals (over 300 pages) and the limited likelihood that in camera review will reveal that the Claims Journals are not privileged further support the court's decision to decline in camera review. *See id.* at 1072.

(#60) is therefore DENIED. Plaintiffs' alternative request for in camera review is also DENIED. Additionally, pursuant to Liberty's stipulation at oral argument, Liberty is precluded from introducing evidence of its counsel's advice regarding the subrogation actions to prove that it acted in good faith in pursuing those actions on behalf of Plaintiffs.

Dated this 7th day of October, 2015

Honorable Paul Papak
United States Magistrate Judge