IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM H. COULTAS; CHRISTINE
COULTAS; and CHRISTINE
SCHWANENBERG, individually and as
Personal Representative of the Estate of Roark
Schwanenberg,

            Plaintiffs,

v.

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

            Defendant.

3:15-cv-00237-PK

OPINION & ORDER

PAPAK, Magistrate Judge:

Plaintiffs William H. Coultas, Christine Coultas, and Christine Schwanenberg (filing

individually and as the personal representative of the Estate of Roark Schwanenberg) filed the

instant action against Defendant Liberty Mutual Fire Insurance Company ("Liberty"). Plaintiffs

allege that Liberty converted their causes of action against the parties that were responsible for a

helicopter crash that killed Mr. Schwanenberg and seriously injured Mr. Coultas. Now before

the court are Liberty's Motion for Summary Judgment (#88), Liberty's Motion to Strike, and

Plaintiffs' Motion to Amend (#79). For the reasons provided below, Liberty's Motion for

Summary Judgment is granted, Liberty's Motion to Strike is denied, and Plaintiffs' Motion to

Amend is denied. Plaintiffs' unopposed Motion for Leave to File a Sur-Reply Opposing

Defendant's Motion for Summary Judgment (#101) is granted.

## FACTUAL BACKGROUND[1]

In 2007, Liberty issued a workers' compensation insurance policy to Carson Helicopters, Inc., which employed Roark Schwanenberg and William Coultas. On August 5, 2008, Mr. Schwanenberg and Mr. Coultas were involved in a work-related helicopter crash that killed Mr. Schwanenberg and seriously injured Mr. Coultas. Shortly thereafter, Liberty began paying death and workers' compensation benefits to Christine Schwanenberg (Mr. Schwanenberg's widow) and Mr. Coultas, respectively, under the terms of the insurance policy. Liberty paid those benefits in full and, pursuant to Oregon law, acquired a lien for the amount thereof. *See* Or. Rev. Stat. § 656.580(2). Liberty then retained outside counsel to represent it in anticipated subrogation actions against the parties that were potentially responsible for the helicopter accident (the "potentially responsible parties").

On October 7, 2008, Liberty sent Plaintiffs form letters notifying them of their option to personally sue the potentially responsible parties or, alternatively, to assign their rights to sue to Liberty (the "Election Letters"). Liberty had used the same Election Letters many times before and mistakenly believed them to be compliant with Oregon law. Mrs. Schwanenberg received her Election Letter on October 14, 2008. It is unclear when exactly Mr. Coultas received his Election Letter. The Election Letters instructed Plaintiffs to sign and return their election to Liberty "within 60 days of receipt" of the Letter. The Election Letters did not inform Plaintiffs that, pursuant to Oregon law, their causes of action would be assigned to Liberty by operation of law if they failed to file suit within 90 days of electing to do so. *See id.* § 656.583(2). Rather, the Election Letters merely stated that Plaintiffs' causes of action were subject to a two-year statute of limitations.

---

[1] Except where expressly indicated otherwise, I construe the evidentiary record according to the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

Mr. Coultas elected to file suit personally and returned his election to Liberty within 60 days of receiving the Election Letter. However, he did not file suit within 90 days of making his election. Mrs. Schwanenberg also elected to file suit personally, but she failed to return her election to Liberty within 60 days of receiving the Election Letter.

On December 10, 2008, Liberty filed a subrogation action in the United States District Court for the Northern District of California on behalf of Mr. Schwanenberg and his survivors and beneficiaries. Likewise, on January 30, 2009, Liberty filed a subrogation action in the United States District Court for the District of Connecticut on behalf of Mr. Coultas. Both lawsuits asserted claims arising from the helicopter accident.

Plaintiffs then retained counsel in an effort to file their own lawsuits regarding the accident. Plaintiffs' counsel informed Liberty that its claimed assignments of Plaintiffs' causes of action were invalid due to flaws in the Election Letters and asked Liberty to dismiss its subrogation actions. Liberty refused.

On May 27, 2009, Plaintiffs moved to intervene in the subrogation actions. While those motions were pending, the subrogation actions were consolidated with other cases arising from the accident[2] and transferred to this court in a multi-district litigation ("MDL") proceeding. The MDL court granted Plaintiffs' motions to intervene.

Then, on February 24, 2010, Plaintiffs separately filed suit in Oregon state court against multiple defendants, asserting claims arising from the helicopter accident. Liberty never made an appearance in either of those suits.

On October 5, 2010, Plaintiffs filed a petition with the Oregon Workers' Compensation Board (the "Board"), asking it to rule on the validity of Liberty's claimed assignments. On April

---

[2] In addition to Mr. Coultas and Mr. Schwanenberg, 11 other people were either killed or seriously injured in the helicopter accident.

8, 2011, the Board ruled that the assignments were void due to misrepresentations contained in

the Election Letters.[3] Liberty then dismissed its subrogation action on behalf of Mr. Coultas.

Liberty appealed the Board's ruling regarding the Schwanenberg assignment. The Oregon Court

of Appeals affirmed the Board's ruling on August 8, 2012. Liberty subsequently dismissed the

Schwanenberg subrogation action.

Meanwhile, Plaintiffs continued to prosecute their Oregon state court lawsuits and

ultimately settled with all of the defendants. Plaintiffs also settled with three other potentially

responsible parties that were not involved in either their state court actions or Liberty's

subrogation actions. In total, Plaintiffs recovered approximately $30,000,000 in settlement

payments.

PROCEDURAL BACKGROUND

On December 10, 2014, Plaintiffs filed their initial Complaint (#1-1) in this action in

Oregon state court, asserting claims against Liberty for conversion, wrongful use of civil

---

[3] The Board determined that both Election Letters contained a misrepresentation by omission
because they did not inform Plaintiffs that Liberty also insured one of the potentially responsible
parties. The Board also determined that the Election Letter sent to Mrs. Schwanenberg contained
an additional misrepresentation because it informed her that she had 60 days from receiving the
Letter to file suit, but Liberty nevertheless filed a subrogation action on Mrs. Schwanenberg's
behalf only 56 days after she received the Letter. Additionally, the Board found that the
Schwanenberg Election Letter contained a material omission because it did not provide, pursuant
to O.R.S. § 656.583(1), a time period of not less than 90 days in which Mrs. Schwanenberg was
required to file suit if she elected to pursue her cause of action or state that if she did not comply
with the time period, her cause of action would be assigned to Liberty. Like the Schwanenberg
Letter, the Coultas Letter did not explicitly provide a time period in which Mr. Coultas was
required to file his own cause of action if he elected to do so. However, the Board analyzed that
issue differently in the Coultas matter. Rather than ruling that the omission was an independent
basis for invalidating the assignment, the Board construed the Letter's statement that Mr.
Coultas's cause of action was subject to a two-year statute of limitations as a representation that
Liberty would not consider Mr. Coultas's cause of action assigned to it by operation of law
before the expiration of that period. Because Mr. Coultas elected to bring his own suit and filed
that suit within the statute of limitations period, the Board determined that he never assigned his
cause of action to Liberty.

proceedings, and breach of duty of good faith and fair dealing. Mrs. Schwanenberg also alleged

fraud against Liberty and its employee, Tim Detrick. Plaintiffs filed an Amended Complaint on

January 12, 2015, eliminating all but the conversion and fraud claims. Liberty removed the

action to this Court on February 11, 2015. Mrs. Schwanenberg then voluntarily dismissed her

fraud claim and, consequently, Detrick. Therefore, all that remains is Plaintiffs' conversion

claim against Liberty.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). A factual

dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson*, 477 U.S. at 248. The substantive law governing a claim or defense

determines which facts are material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d

365, 369 (9th Cir. 1998). In adjudicating a motion for summary judgment, the court must draw

all reasonable inferences in favor of the nonmoving party and may neither make credibility

determinations nor weigh evidence. *See, e.g., Reeves v. Sanderson Plumbing Products, Inc.*, 530

U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990).

## DISCUSSION

I. **Liberty's Motion for Summary Judgment**

A. **The Parties' Argument**

Liberty argues that Plaintiffs' conversion claim is barred by Oregon's litigation privilege

because it is based solely upon Liberty's conduct and statements in connection with the

OPINION & ORDER—PAGE 5

subrogation actions. Alternatively, Liberty argues that even absent the litigation privilege, a reasonable trier of fact could not find that it converted Plaintiffs' causes of action.

In response, Plaintiffs argue that the litigation privilege is inapplicable because they were not defendants in the subrogation actions. According to Plaintiffs, accepting Liberty's characterization of the privilege would create a slippery slope leading to the immunization of conduct that the privilege is not intended to protect. Alternatively, Plaintiffs argue that even if the litigation privilege is applicable, this case falls within the privilege's exception for wrongful initiation of civil proceedings. Plaintiffs further argue that they have presented sufficient evidence to permit a reasonable trier of fact to find that Liberty converted Plaintiffs' causes of action.

**B. Analysis**

Liberty's argument regarding the litigation privilege requires me to analyze the conduct underlying Plaintiffs' conversion claim separately. *See Franson v. Radich*, 735 P.2d 632, 635 (Or. App. 1987) (employing a similar approach in the context of a motion to dismiss). I must consider which, if any, of Liberty's statements and actions are protected by the privilege. I must then determine whether the remaining unprotected statements and actions, if any, are sufficient to create a genuine issue of material fact as to Liberty's liability for conversion.

As I previously explained in ruling on Defendants' Motion to Dismiss, Plaintiffs' conversion claim is based solely on (1) Liberty's sending the deficient Election Letters and (2) Liberty's subsequent prosecution of the subrogation actions. *See* Order 7 (#46). That understanding of Plaintiffs' conversion claim is supported by the allegations in Plaintiffs' Amended Complaint, *see* Am. Compl. ¶¶ 16-21, 30-34, 40-44, 47, 53-55, 63-65 (#1-1),[4] and

---

[4] Plaintiffs' Amended Complaint begins on page 20 of this document.

Plaintiffs' prior argument in opposition to Defendants' Motion to Dismiss, *see* Plfs.' Resp. to

Defs.' Mot to Dismiss 7-8, 11 (#21).

For the reasons provided below, Plaintiffs' conversion claim is barred by the litigation

privilege to the extent it is based on Liberty's prosecution of the subrogation actions. As

Plaintiffs conceded at oral argument, the only remaining alleged statements and actions

underlying their conversion claim—those relating to the Election Letters—are not sufficient to

create a genuine issue of material fact as to Liberty's liability for conversion. Consequently,

Liberty is granted summary judgment.

### 1.  Liberty's Prosecution of the Subrogation Actions

Plaintiffs' conversion claim is barred by the litigation privilege to the extent it is based on

Liberty's prosecution of the subrogation actions. Oregon's litigation privilege is an affirmative

defense that, if successfully established, provides immunity for conduct and statements made in

connection with judicial and quasi-judicial proceedings. *See Mantia v. Hanson*, 79 P.3d 404,

407-08, 411 (Or. App. 2003); *Franson*, 735 P.2d at 634.  The privilege applies to statements and

conduct made preliminary to, as well as in the course of, litigation. *Mantia*, 79 P.3d at 408

(quoting Restatement (Second) of Torts § 586 (1977)).  The privilege is "absolute," and it

"applies equally to parties to such proceedings and to their attorneys." *Id.* at 407 (citations

omitted).  Although the litigation privilege originally arose in the defamation context, Oregon's

appellate courts have extended it to "any tort action" based on conduct or statements made in

connection with litigation. *Wollam v. Brandt*, 162, 961 P.2d 219, 222 n.5 (Or. App. 1998)

(citations omitted).  The courts have articulated only one exception to the litigation privilege: it

does not protect conduct that constitutes wrongful initiation of civil proceedings. *See Mantia*, 79

P.3d at 413-14.  However, a plaintiff need not actually bring a wrongful initiation claim to

circumvent the privilege. Rather, the plaintiff can proceed on a different tort theory, so long as the alleged tortious conduct would satisfy the elements of wrongful initiation. *See id.* at 414.

Liberty's statements and actions in prosecuting the subrogation actions were clearly "connected" to litigation. Immunizing those statements and actions also serves the underlying purpose of the litigation privilege—permitting parties, either personally or through their attorneys, to vindicate their rights in court without fear of retaliatory lawsuits. *See id.* at 411 (citation omitted) (internal quotation marks omitted). Permitting workers' compensation insurers to pursue claims on behalf of their insureds' employees safeguards the insurers' rights. When a workers' compensation insurer pays benefits to an insureds' employee, it acquires a lien for the amount of the benefits against recoveries from third parties. *See* Or. Rev. Stat. § 656.580(2). The insurer can satisfy its lien by successfully suing on behalf of the injured employee.[5] *See* Or. Rev. Stat. § 656.591(2). Any leftover recovery is paid to the insured. *Id.* Absent the litigation privilege, insurers may be hesitant to file suit on behalf of their insureds' employees for fear of retaliatory lawsuits challenging the insurer's ability to bring the suit or the manner in which the insurer pursued the litigation. The litigation privilege is intended to protect against that contingency. *See Mantia*, 79 P.3d at 408, 411 (citation omitted) (internal quotation marks omitted). Consequently, the privilege bars Plaintiffs' conversion claim to the extent it is based on Liberty's prosecution of the subrogation actions.

---

[5] Of course, the insured's employee must assign her cause of action to the insurer. *See id.* § 656.591(2). As explained above, Liberty's purported assignments in this case turned out to be invalid. However, that does not render the litigation privilege inapposite. The paramount interest in unhindered vindication of rights that the litigation privilege seeks to protect requires courts to tolerate a certain amount of necessary evil. *See* Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts § 539 (2d ed.) ("The immunity may sometimes protect scoundrels and liars, but it has always been thought necessary, because if each case is judged on its own merits, honest witnesses and other participants in the trial cannot be assured of protection from suit."); *accord Brown v. Gatti*, 99 P.3d 299, 304 (Or. App. 2004), *aff'd in part, rev'd in part*, 145 P.3d 130 (Or. 2006).

I reject Plaintiffs' argument that the litigation privilege is inapplicable because they were not defendants in the subrogation actions. As stated above, the litigation privilege is intended to permit parties to vindicate their rights in court without fear of retaliatory lawsuits. *See id.* (citation omitted) (internal quotation marks omitted). Plaintiffs' characterization of the privilege undermines that purpose. An example proves the point. Consider a construction litigation scenario. A developer hires a general contractor who, in turn, hires a subcontractor to construct a building. The subcontractor negligently performs its part of the work, thereby damaging the building. The subcontractor subsequently becomes insolvent. The developer therefore sues the general contractor for the damage. In order to succeed in that suit, the developer would need to establish that the subcontractor's work was deficient. However, under Plaintiffs' narrow characterization of the litigation privilege, the subcontractor could sue the developer for defamatory statements the developer made in the underlying litigation for the purpose of establishing the deficiency of the subcontractor's work. That result would fly in the face of the litigation privilege. *See id.* (citation omitted) (internal quotation marks omitted). Consequently, Plaintiffs' narrow characterization of the privilege cannot stand.

Nor am I persuaded by Plaintiffs' slippery slope arguments. According to Plaintiffs, the logical extension of applying the litigation privilege to this case would be immunity for a lawyer who "runs down a pedestrian in the crosswalk on his way to the court," "absconds with . . . settlement proceeds," or "steals a diamond ring from its true owner in order to present it as evidence in court." *See* Plfs.' Resp. 20-21 (#92). Not so. In *Mantia*, the Oregon Court of Appeals held that the litigation privilege does not apply "where the nature of the defendant's conduct was such that the underlying purposes of the privilege would not be served by immunizing that conduct." 79 P.3d at 414. Immunizing the conduct in the above-quoted

scenarios would not further the ability of parties to vindicate their rights in court without fear of retaliatory lawsuits. Consequently, Plaintiffs' slippery slope concerns are unfounded.

Finally, I also reject Plaintiffs' argument that Liberty's pursuit of the subrogation actions falls within the litigation privilege's exception for wrongful initiation of civil proceedings.[6] Liberty's pursuit of the subrogation actions could constitute wrongful initiation of civil proceedings only if: (1) the subrogation actions were terminated in Plaintiffs' favor, (2) Liberty lacked probable cause in prosecuting the subrogation actions, and (3) Liberty's primary purpose in prosecuting the subrogation actions was something other than securing an adjudication of its claims asserted therein.[7] *See Mantia*, 79 P.3d at 414 (citations omitted). In this case, there is simply no evidence that Liberty's primary purpose in prosecuting the subrogation actions was anything other than securing an adjudication of its claims asserted therein.

It is undisputed that Liberty initiated the subrogation actions to recover the liens it acquired by paying benefits to Mrs. Schwanenberg and Mr. Coultas. Indeed, Plaintiffs even admitted as much in their motions to intervene in the MDL proceedings. *See* Marrkand Decl. Ex. 17, at 8, Ex. 18, at 10. Plaintiffs nevertheless argue that Liberty's primary purpose in prosecuting the subrogation actions was to recover, under O.R.S. § 656.591(2), the attorney fees

---

[6] Plaintiffs initially asserted claims for wrongful initiation of civil proceedings but voluntarily dismissed those claims when they filed their Amended Complaint. *See* Notice of Removal, Ex. A (#1-1).

[7] Because my analysis below renders the issue moot, I express no opinion on whether, in the context of the litigation privilege, a plaintiff can establish the elements of wrongful initiation when he was not a defendant in the underlying litigation. *Compare Alvarez v. Retail Credit Ass'n of Portland, Or., Inc.*, 381 P.2d 499, 501 (Or. 1963) (en banc) (holding that, in order to succeed on a wrongful initiation claim, the plaintiff must establish that the defendant commenced litigation against the plaintiff in the underlying action), *and DeHarpport v. W.E.J.*, 348 P.3d 1192, 1195 (Or. App. 2015) (same), *with Mantia*, 79 P.3d at 414 (omitting that element but citing *Alvarez*).

it accrued in relation to those actions. That argument is a *non sequitur*.[8] Liberty could have

simply avoided incurring attorney fees by not filing the subrogation actions. Moreover, Liberty

could have recovered the attorney fees it incurred in the subrogation actions only if it prevailed

on its underlying claims therein. *See* Or. Rev. Stat. § 656.591(2) (permitting an insurer to deduct

from its subrogation recovery the amount of its lien and "expenses incurred in making such

recovery"—i.e. attorney fees—before remitting the rest of the recover to its subrogor). Because

recovery of fees depended on Liberty succeeding in the subrogation actions, Liberty's interest in

fees was, at most, secondary to its interest in succeeding on its substantive claims.

Consequently, a reasonable trier of fact could not find that Liberty's *primary* purpose in

prosecuting the subrogation actions was to recover its attorney fees. *See Mantia*, 79 P.3d at 414

(citations omitted). Plaintiffs' conversion claim is therefore barred by the litigation privilege to

the extent the claim is based on Liberty's pursuit of the subrogation actions.

### 2. The Election Letters

Next, I assume, *arguendo*, that the litigation privilege does not shield Liberty from

liability for the Election Letters. As Plaintiffs conceded at oral argument, even operating under

that assumption, a reasonable trier of fact still could not find that Liberty converted Plaintiffs'

causes of action by sending the Election Letters. *Cf. Franson*, 735 P.2d at 635 ("Because the

allegations remaining after disregarding those protected by the [litigation] privilege do not allege

---

[8] Additionally, pursuit of attorney fees is not the type of improper purpose that typically gives
rise to liability for wrongful initiation of civil proceedings.

> The principal situations in which the civil proceedings are initiated for an
> improper purpose are those in which (1) the person initiating them does not
> believe that his claim may be held valid; (2) the proceedings are begun primarily
> because of hostility or ill will; (3) the proceedings are initiated solely for the
> purpose of depriving the person against whom they are initiated of a beneficial
> use of his property; (4) the proceedings are initiated for the purpose of forcing a
> settlement which has no relation to the merits of the claim.

Restatement (First) of Torts § 676 cmt. on clause b.

conduct sufficient to make out the claim, the trial court did not err in dismissing [the plaintiff's tort claim]."). "To succeed in a conversion claim, the plaintiff must prove 'an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel.'" *Cron v. Zimmer*, 296 P.3d 567, 576-77 (Or. App. 2013) (quoting *Mustola v. Toddy*, 456 P.2d 1004 (Or. 1969)).

Liberty did not exert *any* dominion or control over Plaintiffs' causes of action by sending the Election Letters. The Election Letters merely notified Plaintiffs of their potential claims and requested that Plaintiffs elect to pursue those claims themselves or assign them to Liberty. Liberty did not begin exerting dominion or control over Plaintiffs' causes of action until it filed the subrogation actions—well after it mailed the Election Letters. However, as explained above, Liberty's statements and actions in that regard are protected by the litigation privilege. Because Liberty did not exert dominion or control over Plaintiffs' causes of action by sending the Election Letters, the Letters cannot subject Liberty to liability for conversion.[9] Consequently, Liberty is granted summary judgment.

## II.    Liberty's Motion to Strike

Liberty moves the court to strike the testimony of David Hollander, which Plaintiffs submitted in opposition to Liberty's Motion for Summary Judgment. *See* Def.'s Reply 4-5 n.6 (#95). I have reviewed Hollander's testimony and Liberty's objections. Assuming, *arguendo*,

---

[9] Although Plaintiffs have not pleaded a claim for trespass to chattels, they nevertheless argue that Liberty could be held liable for that tort as a "lesser included offense" of conversion. Plfs.' Resp. 30 (#92). Setting the pleading deficiency aside, Plaintiffs purported trespass to chattel claim fails for the same reason as its conversion claim—a reasonable trier of fact could not find that the Election Letters interfered with Plaintiffs' possession of their causes of action. *See Scott v. Jackson Cty.*, 260 P.3d 744, 752 (Or. App. 2011) (holding that the elements of a claim for trespass to chattels are the same as those of a claim for conversion, the only difference being the extent of the interference with the plaintiff's possession and the remedy).

that the testimony is admissible, it does not change my conclusion that Liberty is entitled to summary judgment. Consequently, Liberty's Motion to Strike is denied as moot.

**III.    Plaintiffs' Motion to Amend**

Plaintiffs do not seek to assert any new or additional claims through their Motion to Amend. Rather, Plaintiffs seek to amend their damages prayer only. Because I have already determined that Liberty is entitled to summary judgment on Plaintiffs' conversion claim, Plaintiffs' Motion to Amend is denied as moot.

## CONCLUSION

For the reasons provided above, Liberty's Motion for Summary Judgment (#88) is granted, Liberty's Motion to Strike is denied, and Plaintiffs' Motion to Amend (#79) is denied. Plaintiffs' unopposed Motion for Leave to File a Sur-Reply Opposing Defendant's Motion for Summary Judgment (#101) is granted. All other pending motions are denied as moot. Judgment should be entered accordingly.

Dated this 9th day of May, 2016.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge